# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PEDRO MARTINEZ, <br><br> Plaintiff, <br><br> v. <br><br> LOUIS GADE, <br><br> Defendant. | Case No. 07 C 1488 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pedro Martinez (hereinafter, "Martinez"), currently a federal inmate at the F.C.I. in Beaumont, Texas, brings this *pro se* "*Bivens*" action pursuant to 28 U.S.C. §1331. He claims that his arrest on March 18, 2005, was unlawful and that excessive force was used in the course of the arrest. Defendant Louis Gade (hereinafter, "Gade"), a Special Agent for the Drug Enforcement Administration (the "DEA"), has filed a Motion for Summary Judgment. Martinez has responded to the motion and has sought leave to file an amended complaint. For the following reasons, the Court denies Martinez leave to file an amended complaint and grants Gade's Motion for Summary Judgment.

## I. STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also, Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir., 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587 (*citing First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56,

showing that there is a genuine issue for trial. *Id*. at 324. Moreover, a party may not attempt to survive a motion for summary judgment through the submission of an affidavit that contradicts testimony in his deposition or other sworn testimony. *Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 638 (7th Cir., 2004); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir., 2001).

## II. **FACTS**

On March 18, 2005, Pedro Martinez delivered approximately one pound of methamphetamine to Jay Zbrozek, an undercover agent of the DEA. (Defendant's Statement of Material Facts ("DSMF") ¶ 5, Ex. 2 (Corcoran Dec.) at ¶ 4.) The delivery took place in an automobile in a parking lot in Cicero, Illinois, northwest of the intersection of Cermak Road and 50th Avenue. *Id.* Present at the scene and participating in the assignment were DEA Group Supervisor Rospond; Special Agents Kevin Corcoran, Christopher O'Reilly, James Chupik, Brian Robbins, Chet Oberling, and Louis Gade; and Task Force Agents Mario Elias and Jay Zbrozek. (DSMF ¶ 6, Ex. 2 (Corcoran Dec.) at ¶ 3.)

After Martinez tendered the methamphetamine to Agent Zbrozek, Zbrozek stepped out of the automobile and provided a prearranged arrest signal to the surveillance agents. (DSMF ¶ 7, Ex. 2 (Corcoran Dec.) at ¶ 3.) DEA Agents Corcoran, Chupik, and O'Reilly were stationed in a Chevrolet Blazer west of the parking lot,

northwest of the undercover vehicle. Agent O'Reilly was driving. Agent Louis Gade, the case agent, was stationed on 50th Avenue, south of Cermak. Other agents were at other locations surrounding the area. (DSMF ¶ 8, Ex. 3 (Chupik Dec.) at ¶¶ 3-4.) Upon receiving Agent Zbrozek's arrest signal, Agents Corcoran, Chupik, and O'Reilly, who were all wearing vests which identified them in large letters as law enforcement officers, drove their Blazer into the parking lot, northwest of the undercover vehicle. (DSMF ¶ 9, Ex. 2 (Corcoran Dec.) at ¶¶ 5-6; Ex. 3 (Chupik Dec.) at ¶ 4.)

### A. The Agents' Account of the Arrest

At this point, the account of the DEA agents diverges from Martinez's account, but the agents' account is still important, because Martinez's account was rejected in significant part by the district court in the criminal case, *United States of America v. Martinez*, No. 05 CR 253 (N.D.Ill.) (Zagel, J.) when it convicted him of knowingly distributing methamphetamine. Agents Chupik and Corcoran testified that upon receiving the arrest signal, they drove right up to the undercover vehicle, got out and that Agent Corcoran pointed a rifle at Martinez. Agent Corcoran shouted, "Stop, police," and Agent Chupik made a similar announcement and ordered Martinez to get on the ground. (DSMF ¶ 10, Ex. 2 (Corcoran Dec.) at ¶ 7; Ex. 3 (Chupik Dec.) at ¶ 4.) Martinez first put up his hands, but then turned and ran south across Cermak. *Id.* Agents Chupik and Corcoran immediately pursued him. (DSMF ¶ 11,

Ex. 2 (Corcoran Dec.) at P 7; Ex. 3 (Chupik Dec.) at ¶ 4.) After he crossed Cermak, Martinez turned and ran east along the sidewalk, with the agents following. Agent Chupik reached Martinez first, grabbing him on the run, and as a result, Agent Chupik and Martinez fell together to the ground, with Agent Chupik on top. (DSMF ¶ 12, Ex. 2 (Corcoran Dec.) at ¶ 8; Ex. 3 (Chupik Dec.) at ¶ 6.) Martinez sustained abrasions to his face and a cut to his lip when he hit the fence and fell on the cement sidewalk. *Id*.

### B. Martinez's Account of the Arrest

Martinez's defense at his criminal trial was that he believed he was working for the DEA as an informant at the time of the methamphetamine delivery. (DSMF ¶ 13, Ex. 4 (Criminal Trial) at 446, lines 20-21.) Consistent with this defense, Martinez denied at his criminal trial that he ran away from DEA Agent Chupik and Corcoran. (*Id*. at 394, lines 13-15.) Martinez denied that the agents drove up and ordered him to stop – according to Martinez, the Chevy Blazer screeched to a halt approximately 150 feet away from Martinez, who was standing next to the undercover vehicle. Martinez claims he saw a foot get out of the car and could see what he thought was a pistol, but that he did not see anybody get out of the car. (DSMF ¶ 14, Ex. 1 (Martinez Deposition) at 38-39; Ex. 4 (Criminal Trial) at 368, lines 21-24.) According to Martinez, he believed that the men in the car were working for a drug dealer named Angel. Martinez testified at his criminal trial and his

deposition that he crossed Cermak to look for Angel and ran hurriedly in order to avoid the cross traffic. (DSMF ¶ 15, Ex. 1 (Martinez Deposition) at 40, lines 16-18.) Martinez expressly and repeatedly denied fleeing from the DEA agents. (DSMF ¶ 16, Ex. 4 (Criminal Trial) at 393-94.)

Martinez testified that after he crossed Cermak, he saw Agent Louis Gade in an official vehicle on 50th Avenue, about half a block, 200 feet, south of Cermak driving north toward Martinez. (DSMF ¶ 17, Ex. 1 (Martinez Deposition) at 43-44.) Martinez stayed on the corner for only two seconds and then turned left and ran approximately five steps east on Cermak. (DSMF ¶ 18, Ex. 1 (Martinez Deposition) at 47, lines 3-13.) After, by his estimate, five steps, an agent Martinez could not identify grabbed him from behind. *(Id.*, lines 11-15.) Martinez claims that he saw the agent, knew he was being arrested, raised his arms to submit, and then put them behind his back so that he could be handcuffed. But, according to Martinez, the agent did not want to arrest him, he wanted to hurt him, and painfully twisted Martinez's arm, and then threw him to the ground. (DSMF ¶ 19, Ex. 1 (Martinez Deposition) at 26, lines 14-20; 47, lines 21-25.) Martinez claims he was on the ground for approximately 10 seconds, until handcuffs were put on him, and that during these seconds numerous other officers arrived. (DSMF ¶ 20, Ex. 1 (Martinez Deposition) at 48, lines 13-20.) Martinez claims that during the approximately 10 seconds that

he was on the ground, other unidentified officers kicked him in the side and the head. Martinez testified that he did not know how many agents arrived and that he was not able to see them or identify who allegedly kicked him. (DSMF ¶ 21, Ex. 1 (Martinez Deposition) at 51, lines 18; *Id.* lines 3-10.)

Further, according to Martinez's account, as soon as the handcuffs were on, someone ordered him to stand up against the fence. (DSMF ¶ 22, Ex. 1 (Martinez Deposition) at 51, lines 24-25.) Then someone, Martinez could not see who, banged his head against the fence five times. (*Id.* at 48, lines 21-25; 49, lines 1-4, 14-15.) Martinez testified that he was then left at the fence for some seconds, during which his face was bleeding. After that, unidentified DEA agents turned him around and saw that he had injured his face. (DSMF ¶ 23, Ex. 1 (Martinez Deposition) at 49, lines 9-13, 17-19, 21-22.)

It was at this time, after all of the alleged injuries were completed, that Martinez saw Agent Gade for the first time since he had seen him in the car driving north on 50th Avenue. (DSMF ¶ 24, Ex. 1 (Martinez Deposition ) at 53, lines 6-14.) When Martinez turned around, he saw that Agent Gade was among the numerous agents present. Gade administered first aid to Martinez, using a piece of paper to assuage the bleeding on Martinez's face. (*Id.* at 52, lines 19-23; 53, lines 15-17.) According to Martinez's own account, from the time that he saw Gade, no one did anything to

hurt him.  (DSMF ¶ 25, Ex. 1 (Martinez Deposition) at 50, lines 1-5; 54, line 7; 55, line 6.)

According to Martinez's account, the total time that elapsed between when Martinez saw Gade's car south of Cermak and the time of the last act that Martinez claims injured him was approximately 35 seconds (a few seconds for him to run five steps east on Cermak; fifteen seconds being held by the officer who grabbed him; ten seconds on the ground; five or ten seconds for someone to bang his head against the fence).  (DSMF ¶ 26, Ex. 1 (Martinez Deposition) at 26, 47-49, 51.)

At Martinez's criminal bench trial, notwithstanding his testimony, Judge Zagel found that Martinez had fled from the DEA and that his flight was "significant evidence" that he did not truly believe that he was an informant working for the DEA. (DSMF ¶ 27, Ex. 4 (Criminal Trial) at 458-59.)

### C. Martinez's Injuries

When an individual is injured in the course of an arrest, it is usual for the DEA to take the individual for medical evaluation and any necessary treatment before taking the individual to the Metropolitan Correctional Center (the "MCC").  Group Supervisor Rospond directed Agents Chupik and Robbins to take Martinez to MacNeal Hospital for evaluation and treatment before transporting him for processing.  (DSMF ¶ 28, Ex. 2 (Corcoran Dec.) at ¶ 10; Ex. 3 (Chupik Dec.) at ¶ 7.)

Defendant submitted the certified medical record from MacNeal Hospital as Exhibit 5. The nurse's triage note shows that Martinez complained of a "fall on cement against a fence." (DSMF ¶ 29, Ex. 5 (Medical Record) at K1.) The doctor, Elizabeth Rosenblum, M.D., took the history in which Martinez said that he "fell while being apprehended by police." (DSMF ¶ 29, Ex. 5 (Medical Record) at K2.)

The medical records document Martinez's injuries as follows: "There is a ragged 3 cm laceration of the inner mucosa of the mouth, clean. There is no foreign body in the wound. No neurovascular deficit related to this injury. Multiple abrasions and scratches on forehead, cheeks and chin. An abrasion. There is no local evidence of infection." (DSMF ¶ 31, Ex. 5 (Medical Record) at K2.) Martinez was treated for the abrasions on his face, the 3 cm cut was closed with 4-0 Vicryl, and Martinez was prescribed Ibuprofen and Bacitracin. (DSMF ¶ 35, Ex. 5 (Medical Record at K2.)

The medical records further documents that Martinez had no other injuries, and that the doctor examined him for any physical signs of mistreatment or other injuries. (DSMF ¶¶ 32-34, Ex. 5 (Medical Record) at K2.) The doctor noted that there was no trauma to Martinez's head, that his temples and scalp were not tender, and that there were "no battle or raccoon signs." (DSMF ¶ 33, Ex. 5 (Medical Record) at K2.) The medical report also documents

separate examination of and specific findings concerning Martinez's neck, eyes, ears, nose, teeth, throat, chest, lungs, heart, abdomen, back, pelvis, and upper and lower extremities. (DSMF ¶ 34, Ex. 5 (Medical Report) at K2.)

### III. ANALYSIS

#### A. Martinez's Amended Complaint

Martinez submitted his amended complaint after Gade filed his motion for summary judgment. In his amended complaint, Martinez seeks to join five new defendants, James Chupik, Kevin Corcoran, Jason Zbrozek, Mario Elias, and Anthony Balsamo, the other DEA agents involved in his arrest on March 18, 2005.

If the summary judgment record establishes that any or all of the proposed amendments would be futile, then leave to amend may be denied. *See Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 860 (7th Cir., 2001) ("An amendment is futile if the added claim would not survive a motion for summary judgment."); *accord Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir., 1996); *Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir., 1995); *Estate of Porter by Nelson v. State of Ill.*, 36 F.3d 684, 690 (7th Cir., 1994); *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir., 1989).

Allowing Martinez to add new defendants at this time runs afoul of the statute of limitations. The statute of limitations for *Bivens* actions in Illinois is two years. *See Delgado-Brunet v.*

*Clark*, 93 F.3d 339 (7th Cir., 1996) (*Bivens* action in Illinois subject to two-year limitations period). The statute of limitations therefore expired on this action on March 18, 2007, two years after the alleged events.

In this Circuit, a plaintiff cannot invoke the relation back principles of FED. R. CIV. P. 15(c) to name new defendants after the statute of limitations has expired. *See Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir., 1993); *see also Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir., 1980). Rule 15(c) permits an amendment to relate back to the original complaint only where "there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir., 1998). Rule 15(c) does not permit relation back where there is a lack of knowledge of the proper party. *Id.; see also Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir., 1996). "The Seventh Circuit has 'consistently held that Rule 15(c)(3) does not provide for relation back under circumstances . . . in which the plaintiff fails to identify the proper party.' " *Eichwedel v. Rodriguez*, No. 96 C 6321, 2000 WL 286809, *6 (N.D.Ill., Mar. 9, 2000) (Pallmeyer, J.), *citing King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir., 2000).

In Martinez's amended complaint, Martinez is not simply correcting the mistaken name of a party but rather is seeking to

join five previously unnamed individuals. Moreover, defendants cannot be charged with knowledge of the mistake. As noted above, the events about which Martinez complains occurred in 2005. There is no reason why Martinez could not have obtained a copy of his arrest report or other document in order to have named all defendants before the statute of limitations expired.

It would thus be futile to allow Martinez to amend to add new defendants. *See, e.g., Indiana Funeral Directors Ins Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir., 2003) (district court may properly exercise its discretion to deny proposed amendment on futility grounds) (citation omitted); *McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380, 385 (7th Cir., 1996). The Court accordingly denies Martinez leave to file his amended complaint.

Martinez has also filed a motion requesting Defendant to relinquish all discovery/evidence in their possession that may be used in trial/defense of civil suit. Gade replied that, although Martinez stated in his complaint that he had medical records and pictures to support his claim, he was sending Martinez copies of all the medical records he had obtained and also of the pictures taken of Martinez shortly after his arrest. The Court accordingly denies Martinez's motion as moot.

## B. Martinez's Unlawful Arrest Claim

Gade argues that a finding in favor of Martinez in regard to his unlawful arrest claim would undermine his criminal conviction, which is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, 512 U.S. at 486-87 (1994), the United States Supreme Court held that:

> . . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. . . .

This same analysis applies to *Bivens* actions. *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir., 1997).

In the instant case, Martinez's conviction has not been invalidated in some manner. In fact, the Seventh Circuit recently affirmed Martinez's conviction in *United States of America v. Martinez*, No. 07-1979 (7th Cir., Jun. 12, 2008). The Court of Appeals specifically found:

> In finding Martinez guilty, the district court thought it implausible that as a novice in the drug trade Martinez was able to meet a large-scale drug supplier and within weeks persuade him to front Martinez a pound of methamphetamine. The court also viewed

> Martinez's flight from the officers after his
> delivery to Zbrozek strong evidence that
> Martinez wasn't cooperating and did not
> believe otherwise. Moreover, the court
> reasoned that Martinez's failure to contact
> DEA agent Gade before or after the first sale
> showed that he didn't believe he was
> cooperating. The court added that, even if
> Martinez had believed he was working for the
> DEA, his belief was unreasonable given his
> testimony that Quinonez told him that "Gade"
> was trying to set him up.

When filing this civil action, Martinez stuck to the same story as his defense in his criminal trial, that is, that when he delivered the methamphetamine, he believed he was working for the DEA as a confidential informant. Judge Zagel rejected this defense, relying in part on the fact that Martinez fled when the DEA announced its presence. However, Martinez argues in this action that he was not fleeing but was running toward Angel's vehicle, the trafficker on whom Martinez claims that he had agreed to inform.

Martinez also seeks to dispute Agents Corcoran and Chupik's declarations. (Defendant's Exhibits 2 & 3.) He argues that the agents work together and had all the time in the world to "hone" their story; and if they had pulled up adjacent to the undercover vehicle stating "Stop, police," these words would have been recorded on Jason Zbrozek's body wire (Government's Exhibit 41 in Martinez's criminal trial).

Accepting Martinez's versions of the events, that is, that he was not fleeing and that Corcoran and Chupik did not state "Stop,

police," would undermine his criminal conviction, which is barred by *Heck*. The Court accordingly grants summary judgment for Gade in regard to this claim.

### C. Martinez's Excessive Force Claim

Although Martinez's unlawful arrest claim is barred by *Heck*, his claim that Gade used excessive force when apprehending him may not be *Heck* barred. For example, if the excessive force occurred after the events leading to Martinez's apprehension, it is not barred by *Heck*. See *Robinson v. Doe*, 272 F.3d 921 (7th Cir., 2001); *Washington v. Summerville,* 127 F.3d 552, 556 (7th Cir., 1997); *Gregory v. Oliver*, 226 F.Supp.2d 943, 952 (N.D.Ill., 2002, Shadur, J.).

The Court therefore will consider whether the force used while apprehending Martinez was excessive.

The use of excessive force by law enforcement officers during the course of an arrest or seizure constitutes a Fourth Amendment violation actionable under § 1983. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Such a claim must be analyzed under the "objective reasonableness" standard which requires the Court to evaluate the circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also, Frazell v. Flanigan*, 102 F.3d 877, 883

(7th Cir., 1996); *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir., 1996). The objective nature of the inquiry mandates against consideration of the officer's intent or motivation. *Graham*, 490 U.S. at 397; *Frazell*, 102 F.3d at 883.

In the instant case, Martinez alleges that in effecting the arrest, the DEA agents used excessive force, specifically, that he was thrown to the ground and that three ribs and his jaw were broken. He also claims that he had numbness in his lung and his back and neck were stepped on.

Gade argues first that Martinez's medical records belie his claim that he was severely kicked in the face and body. The examining doctor documented that Martinez was uninjured except for abrasions and a cut. The doctor, as evidenced by the medical records, thoroughly examined Martinez and did not find any injuries such as three broken ribs and a broken jaw that Martinez claimed he received.

In response, Martinez argues that the hospital did not examine him fully and accepted the story that the DEA agents told as to how Martinez was injured. As noted earlier, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. Martinez

has offered nothing other than his own self-serving statements that he suffered serious injuries when the agents arrested him.

Gade next argues that Martinez has proffered no evidence that Agent Gade used excessive force or directed anyone to use excessive force.  A plaintiff may sue a particular defendant only for his own acts, not the acts of others; there is no liability pursuant to a respondeat superior theory.  *See Alejo v. Heller*, 328 F.3d 930, 932, 936 (7th Cir., 2003); *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir., 1997) (To state a cause of action under *Bivens*, the plaintiff must allege facts showing that the individual defendant was involved personally in the deprivation of the plaintiff's constitutional rights); *see also Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir., 1994) (noting that there is no respondeat superior liability under *Bivens*).

In the instant case, Martinez testified that he saw Gade in an automobile half a block south of Cermak prior to being brought down by another agent.  The next time Martinez saw Gade was after the blows Martinez alleges were inflicted by unidentified individuals.  Martinez claims no injuries were inflicted after he saw Gade.  Martinez testified that the first thing Gade did was to administer first aid for the bleeding on Martinez's face.  Even assuming some kind of excessive force was employed when Martinez was apprehended (which, as discussed above, the medical records refute), Martinez

has not demonstrated that Gade was personally involved in any use of excessive force.

The Court accordingly finds that Gade was not personally involved in any alleged use of excessive force and grants summary judgment to Gade as to this claim.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's Motion for Leave to File Amended Complaint is denied.  Defendant's Motion for Summary Judgment is granted.  Plaintiff's Motion in Dispute of DEA Agents Corcoran's and Chupik's Declarations and Motion for Defendants to Relinquish all Discovery/Evidence in their Possession that may be used in Trial/Defense of Civil Suit are denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 3/20/2009